## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

S.D., et al.                            *
                                        *
            v.                          *            Civil No. JFM-12-149
                                        *
                                        *
JOSHUA P. STARR, et al.                 *
                                        *
                                        *
                                 ******

## MEMORANDUM

Plaintiffs Jason and Amy Diaz ("parents"), in their own right and on behalf of their son, S.D., bring this suit against Joshua P. Starr, in his official capacity as the superintendent of the Montgomery County Public Schools ("MCPS"), and the MCPS (collectively "defendants") alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Under the IDEA, the parents requested an administrative due process hearing, claiming defendants failed to provide S.D. a free appropriate public education ("FAPE") as required by the IDEA and should, therefore, place and fund S.D. at the Katherine Thomas School ("KTS") during the 2011-2012 school year. In his decision of December 21, 2011,[1] state administrative law judge Brian Zlotnick ("ALJ") found defendants did provide S.D. a FAPE and, thus, had no obligation to pay tuition for S.D. at KTS.

On January 13, 2012, S.D.'s parents filed a civil action in the United States District Court for the District of Maryland, pursuant to the IDEA, 20 U.S.C. § 1415(i)(2), seeking reversal of the ALJ's decision along with attorneys' fees, costs, and other declaratory relief. The parties have filed cross-motions for summary judgment. The issues have been fully briefed, and no hearing is necessary. *See* Local Rule 105.6. For the following reasons, the court denies

---

[1] Citations to ALJ Zlotnick's December 21 Opinion are referred to as "ALJ Decision at __."

plaintiffs' motion for summary judgment and grants defendants' cross motion for summary judgment.

## I.    Background

The following facts are undisputed by the parties.  S.D. was born prematurely on November 10, 2003.  (ALJ Decision at 8.)  Consequently, he has multiple health impairments including chronic lung disease, Gastroesophageal Reflux Disease (GERD), and Attention Deficit Hyperactive Disorder (ADHD) and receives nutrition and hydration through a gastrostomy tube. (*Id.*)  Because of his chronic lung disease, he is susceptible to contracting viruses and infections that could develop into pneumonia.  (*Id.* at 31.)

MCPS has found S.D. eligible to receive services under the IDEA as a child with an Other Health Impairment.  (Compl. ¶ 9.)  For the 2008-2009 school year, S.D. received pre-school special education services at his home due to his medical condition.  (ALJ Decision at 31.)  At a special education mediation on July 13, 2009, S.D.'s parents and MCPS agreed that S.D. would attend classes at Little Bennett Elementary School ("LB") during the 2009-2010 school year for half days with a dedicated para-educator and continue to receive in-home special education services under MCPS' Home and Hospital Teaching program ("HHT").  (*Id.*)  S.D.'s mother and appropriate agents of the school system attended a meeting on August, 11, 2009 where they developed an individualized educational plan ("IEP") reflecting that agreement ("2009 IEP").  (*Id.* at 9.)

That fall S.D. attended kindergarten classes at LB, pursuant to the 2009 IEP, but his mother withdrew him from school on November 4, 2009 due to a "respiratory flare-up" she feared would result in pneumonia.  (*Id.* at 12.)  During the time he attended LB, S.D. did not exhibit signs of illness although he was absent 10.5 days in September 2009 and 3 days in

October 2009.  (*Id.* at 10, 19.)  According to the MCPS teacher and staff, he was able to access the general education program and work independently without the para-professional assigned to him.  (*Id.* at 11.)

After his November removal from LB, S.D. was not hospitalized for the "respiratory flare-up" and did not develop pneumonia.  (*Id.* at 12.)  At an IEP meeting on November 11, 2009, however, S.D.'s mother indicated that LB was not an appropriate setting for him due to his medical issues.  (*Id.*)

On March 16 and December 6, 2010, further IEP meetings were held to develop educational goals and objectives for S.D. who continued the HHT program at home following his physician's recommendation.  (*Id.* at 17.)  On February 12 and 26, 2011, Amy Mounce, an education expert retained by S.D.'s mother, conducted an evaluation of S.D. and made educational recommendations that the IEP team considered at a meeting on May 19, 2011.  (*Id.* at 20-21.)  The IEP developed at that meeting ("2011 IEP") laid out S.D.'s education program for the remainder of the 2010-2011 school year and the 2011-2012 school year.  (*Id.*)

The 2011 IEP proposed full-time enrollment for S.D. at LB for the 2011-2012 school year upon medical release to return to school.  (*Id.* at 25.)  It proposed 12.5 hours of inclusion special education instruction and 5 hours of pull-out related services per week along with other occupational therapy, speech and language, and physical therapy sessions.  (*Id.*)  Since November 4, 2009, however, S.D. has continued to receive HHT services as well as related occupational therapy, physical therapy, and speech and language services in the basement of his home pursuant to continuing HHT applications completed by his physician, Dr. Bautista.  (*Id.* at 32.)

On June 28, 2011, the parents filed a due process hearing request seeking placement for

S.D. at KTS, a private school certified by the State for special education placements, with

funding provided by MCPS.  (*Id.* at 25-26.)  The due process hearing took place over the course

of eight days in October and November 2011 before state ALJ Brian Zlotnick of the Maryland

State Office of Administrative Hearings during which the parents sought to show that defendants

failed to provide S.D. a FAPE and should place and fund him at KTS during the 2011-2012

school year.  In his decision of December 21, 2011, ALJ Zlotnick found the IEP proposed by

MCPS was reasonably calculated to offer S.D. a FAPE and that LB was an appropriate

placement for him.  (ALJ Decision at 45.)  The parents now appeal this decision in district court,

and this court considers cross-motions for summary judgment filed by both parties.

## II.      Standard of Review

A summary judgment motion should be granted when the record establishes that there is

no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A material fact is one that may affect the outcome of the suit.  *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

"genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Id.*  "When cross-motions for summary judgment are submitted to a district court, each

motion must be considered individually, and the facts relevant to each must be viewed in the

light most favorable to the non-movant."  *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003).

A district court reviewing an administrative decision in an IDEA action must make an

"independent decision[ ] based on a preponderance of the evidence."  *Bd. of Educ. of Hendrick*

*Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 205 (1982) (internal quotations omitted).  The

court must also give "due weight" to the ALJ's determinations, however, and must not

"substitute [its] own notions of sound educational policy for those of the school authorities which [it] review[s]." *Id.* at 206. In an IDEA case, if a district court chooses not to follow regularly made administrative findings entitled to be considered *prima facie* correct under *Rowley*, it must explain why it does not. *Hartmann v. Loudoun Cnty. Bd. of Educ.*, 118 F.3d 996, 1000-01 (4th Cir. 1997); *Doyle v. Arlington Cnty. Sch. Bd.*, 953 F.2d 100, 105 (4th Cir. 1991).

To determine whether administrative findings are regularly made and entitled to deference under *Rowley*'s "due weight" standard, the court should consider the methods the ALJ employed in making the decision below. *Doyle*, 953 F.2d at 105. Under this standard, a court should give deference even to a poorly explained administrative decision as long as the hearing officer used standard fact-finding methods. *J.P. ex rel. Peterson v. Cnty. Sch. Bd. of Hanover Cnty.*, 516 F.3d 254, 262 (4th Cir. 2008) ("While it would of course be preferable for hearing officers to explain their analysis in as much detail as possible, a hearing officer's failure to meet this aspirational standard does not provide a basis for concluding that the factual findings contained in a statutorily compliant written opinion were not regularly made and therefore not entitled to deference.").

In an IDEA action the burden of proving that a state hearing officer's decision was erroneous rests with the party challenging the decision. *Barnett v. Fairfax Cnty. Sch. Bd.*, 927 F.2d 146, 152 (4th Cir. 1991). In the present case, because S.D.'s parents challenge the administrative decision below, they bear the burden of proof.

### III.    Legal Standard Under the IDEA

In *Rowley*, the Supreme Court set out a two-part test to determine if a local educational agency has satisfied its obligation under the IDEA to provide a FAPE to a student with a disability. *Rowley*, 458 U.S. at 206-07. The court must determine, first, whether the State

5

complied with IDEA procedures, and, second, whether the IEP developed through proper procedures is "reasonably calculated to enable the child to receive educational benefits."  *Id.*; *see also In Re Conklin*, 946 F.2d 306, 313 (4th Cir. 1991).  In this case, S.D.'s parents do not allege procedural error on the part of MCPS, so the court will not address the first prong of the *Rowley* analysis.

The Supreme Court in *Rowley* determined that a school provides a FAPE when the IEP provides access to an educational program that confers "some educational benefit" upon the student with a disability.  *Rowley*, 359 U.S. at 200.  In addition to providing this "basic floor of opportunity," *id.* at 201, the IEP must place the child in the least restrictive environment ("LRE"), meaning that students with and without disabilities should be educated in the same classroom "to the maximum extent appropriate," 20 U.S.C. § 1412(a)(5)(A).  In some cases, however, a general education environment may not be an appropriate placement for a child due to the nature or severity of her disability.  34 C.F.R. § 300.114(a)(2)(ii).  In such a case, a FAPE might require placement of the child in a private school with full funding by the public school district.  *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369 (1985).  The school district is not required to pay for the student's tuition at private school, however, if it satisfied its obligation to provide a FAPE for the student.  34 C.F.R. § 300.148(c).  Parents may recover the cost of private education only if a court finds both the proposed IEP inadequate in its provision of a FAPE and the private education services obtained by the parent appropriate to meet the child's needs.  *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 15 (citing *Burlington*, 471 U.S. at 374).

**IV.    Analysis**

After the administrative due process hearing in this case, ALJ Zlotnick found that the

2011 IEP proposed by MCPS was reasonably calculated to provide a FAPE for S.D.  The ALJ's

findings of fact were regularly made, and this court, as required by *Rowley*'s "due weight"

standard, treats them as *prima facie* correct when making a decision based on the preponderance

of the evidence.[2]  This court considers the detailed opinion the ALJ wrote in support of his

December 21, 2011 decision.

In his written decision, the ALJ weighed the testimony of S.D.'s mother and Ms.

Mounce, the expert educational consultant she retained, along with that of the expert witnesses in

special education, nursing, and related therapy services presented by MCPS.  The ALJ relied

heavily on the opinions of the MCPS witnesses, who had worked with and observed S.D. both at

home and at LB, and particularly on the testimony of Ms. Bulebush who had provided

occupational therapy to S.D. for four years during both his time at LB and on HHT.  (ALJ

Decision at 37, 41-42.)    The MCPS experts testified that MCPS "easily managed [S.D.'s] health

issues" while he was at LB and that his "medical issues did not prevent him from accessing the

general education programming" there.  (*Id.* at 34.)  Further, the MCPS experts presented

overwhelming evidence that S.D. did make educational progress during his time at LB.  (*Id.* at

35.)

In contrast, the ALJ noted that Ms. Davis, the parents' sole expert witness, had never

observed S.D. in a classroom setting but only during six to eight hours of visits leading up to

---

[2] While the ALJ decision does include potentially irrelevant analysis of the appropriateness of the placement of S.D. at KTS in comparison with one at LB, that analysis is not necessary to the ALJ's other findings and does not affect the deference owed to the regularly made administrative finding that MCPS did in fact provide a FAPE to S.D.

October 2010.  Further, Ms. Davis did not administer the tests the parents rely on in attempting

to show S.D.'s lack of academic progress.  (*Id.* at 42.)

       Additionally, the ALJ found the testimony of S.D.'s mother logically inconsistent

because she claimed the LB setting was unsafe for S.D.'s health but allowed him to travel in

standard public transportation and stay in public accommodations where the health environment

is less controlled than at LB.  She also allowed S.D. to interact with his two sisters who attended

LB and could spread germs from the very environment she found unsafe for S.D.

       The parents claim that the ALJ erred in discrediting the opinion offered by Dr. Bautista,

the physician who completed the repeated applications for S.D.'s HHT services, because she

failed to testify at the due process hearing.  This court finds, however, that the lack of weight

given by the ALJ to Dr. Bautista's recommendations is sufficiently founded for two reasons.

First, Dr. Bautista was not qualified to make educational programming recommendations such as

a specific educational environment necessary for S.D.  (ALJ Decision at 38-39 (citing *Marshall*

*Joint Sch. Dist. No. 2 v. C.D. ex rel. Brian D.*, 616 F.3d 632, 640-41 (7th Cir. 2010)[3] (A

"physician's diagnosis and input on a child's medical condition is important and bears on the

team's informed decision on a student's needs.  But a physician cannot simply prescribe special

education.") (internal citations omitted)).)  Second, Dr. Bautista's medical recommendation,

drawing a seemingly arbitrary distinction between the safety for S.D. of the 22-student class at

LB and the 15-student class at KTS, is unconvincing.  (ALJ Decision at 29.)

       The parents' argument that MCPS is required to have a medical doctor evaluate S.D.'s

medical condition also fails.  MCPS fulfilled its obligation under the IDEA to evaluate S.D. by

assembling an IEP team of educational experts including a school nurse, certified to testify as an

---

[3] The ALJ acknowledged that the Seventh Circuit's opinion in *Marshall* is not binding but
merely persuasive; such qualified consideration is a standard method of analysis and does not
render the finding unworthy of *Rowley*'s "due weight."

expert in nursing, and was not required to include an evaluation by a medical doctor in its analysis of S.D.'s health condition.  *See* 30 C.F.R. § 300.304(c)(4) (requiring assessment "in all areas related to the suspected disability, including, if appropriate, health" but not requiring assessment conducted by physician).  The ALJ found testimony from the school nurse who had reviewed S.D.'s medical records from his physicians persuasive, and this court agrees.

### Conclusion

ALJ Zlotnick followed standard methods of legal analysis in finding that MCPS did provide S.D. a FAPE, so I find no reason not to follow his administrative findings.  I agree that overwhelming evidence shows MCPS did provide a FAPE to S.D.  Since I agree with the ALJ that the 2011 IEP provided S.D. with a FAPE, I will not consider the issue of whether KTS is an appropriate placement.  Having fulfilled the requirements of the IDEA by providing S.D. a FAPE, MCPS need not reimburse, or prospectively fund, S.D.'s tuition at KTS.  Accordingly, the defendants' motion for summary judgment is granted, and the plaintiffs' motion for summary judgment is denied.


November 30, 2012
Date

/s/
J. Frederick Motz
United States District Judge